(C. D. 1142)

MAMARY BROS., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 8, 1948)

*Lane & Wallace (William H. Fox* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General, for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: The question presented in this case is the proper rate at which the currency of the invoice, English pounds, should be converted into United States dollars under section 522 (c) of the Tariff Act of 1930.

Counsel have submitted the case upon the following stipulation:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the plaintiff and the Assistant Attorney General for the United States:

That the merchandise imported under the entry covered by the above protest consists of flax fabrics and flax handkerchiefs and is not of the class or kind of merchandise described in Statutory Rules and Orders Nos. 291 and 689 of the Government of the United Kingdom.

That between March 25, 1940 and June 9, 1940, both inclusive, the said merchandise covered by said entry and protest was freely offered for sale and sold, for export, to all purchasers in the principal markets of the United Kingdom, in the usual wholesale quantities, and in the ordinary course of trade, in "free" pounds sterling; that "free" pounds sterling are such as could be freely acquired in the open market at the free rate of exchange for such currency in effect on the date of purchase thereof; that the export of said merchandise from the United Kingdom was freely permitted by the British Government upon payment for the merchandise in "free" pounds sterling; that the above importer purchased said merchandise in pounds sterling convertible into United States dollars at the "free" rate of exchange; and that said merchandise was not within the class of merchandise required by the British Government to be purchased and paid for in pounds sterling acquired at the "official" rate of $4.035 for such currency as fixed by the British Treasury, if intended for export.

That in acquiring the pounds sterling which were remitted in payment for the instant merchandise, the importer herein purchased the pounds sterling in the New York market from the Chase National Bank at the "official" rate of $4.035 for such currency. The said pounds sterling so purchased and remitted by the importer herein in payment for the said merchandise were not required by the British Government to be obtained by the said importer, as purchaser of the said merchandise, at the official rate for pounds sterling as fixed by the British Treasury, from the Bank of England or from an authorized dealer as that phrase is defined in Section 2 (2) of the Defence (Finance) Regulations, Amendment (No. 2) Order, 1939, Statutory Rules and Orders 1939, No. 1620, of the Government of the United Kingdom.

That the date of exportation and the free rate of exchange for pounds sterling for that date, determined and certified by the Federal Reserve Bank under Section 522 (c) of the Tariff Act of 1930, were as set forth by the Collector of Customs on the entry involved herein; and that the merchandise was exported between March 25, 1940 and June 9, 1940, both inclusive.

That except for the official rate of exchange which the importer herein paid for the pounds sterling remitted in payment for the merchandise, the facts and the issue herein are the same in all material respects as those presented in *John Barr* v. *United States*, C. D. 801, the record in which, it is agreed, be admitted in evidence and made part of the record in the above protest, and that said protest may be deemed to be submitted for decision on this stipulation.

Plaintiff waives the right to first docket call and amendment of said protest and, subject to the approval of the Court, plaintiff may have 30 days after the date of filing of this stipulation with the Court in which to file a brief, and the Government may have 30 days after the date of filing plaintiff's brief in which to file a brief.

A brief was filed on behalf of the plaintiff but the Government stated that upon consideration of the record and brief of opposing counsel it did not desire to file a brief.

In the case of *John Barr* v. *United States*, 11 Cust. Ct. 88, C. D. 801, the record in which is incorporated herein, it was held that the collector of customs should have used the "free" rate of exchange as a basis for conversion of the currency rather than the "official" rate. This holding was affirmed in *John Barr* v. *United States*, 324 U. S. 83. The only point of difference between the incorporated case and the one now before us is that in the *Barr* case, *supra*, the pounds sterling remitted in payment for the merchandise were purchased at the "free" rate for such currency, whereas in the instant case, counsel agree that the importer purchased the pounds sterling from the Chase National Bank at the "official" rate, although it is further agreed that the merchandise here involved was not within the class of merchandise required by the British Government to be purchased and paid for in pounds sterling acquired at said "official" rate.

The statements in the third and fourth paragraphs of the stipulation, above quoted, appear to the court to be ambiguous, if not contradictory.

In the third paragraph counsel agree that the importer purchased said merchandise in pounds sterling convertible into United States dollars at the "free" rate of exchange. Paragraph four states that said importer purchased the pounds sterling which were remitted in payment for the merchandise in the New York market from the Chase National Bank at the "official" rate.

We note that the date of exportation as set forth by the collector on the entry involved herein, which is agreed to be correct by both parties litigant, was May 17, 1940, at which time the "free" rate of exchange for pounds sterling was $3.239285. The record is silent as to the date on which the plaintiff obtained the pounds sterling at the "official" rate of $4.035 from the Chase National Bank.

If our understanding of the stipulation is correct, the merchandise was purchased in pounds sterling which the laws of the United Kingdom did not require should be acquired at the official rate for use in payment of the goods here involved when intended for export. Nevertheless, the importer herein did acquire the pounds sterling which were remitted in payment for the merchandise at said "official" rate. We are not informed as to the reason why said importer failed to take advantage of the lower rate of exchange. However, upon the facts as presented, we find no reason for departing from the holding of the Supreme Court as set forth in the *Barr* case, *supra*, i. e., that the proper rate at which the currency of the invoice should have been converted into United States dollars under section 522 (c), *supra*, is the "free" rate and not the "official" rate.

In arriving at this conclusion, we are not unmindful of the reasoning of the Supreme Court in the *Barr* case, *supra*, in which, after setting forth the history of legislation relat've to conversion of cur-

rency on invoices of imported merchandise, the court, speaking through Mr. Justice Douglas, said:

> This history makes clear the search which has been made for a measure of the true dollar values of imported merchandise for customs purposes which was accurate (see *Cramer* v. *Arthur*, 102 U. S. 612, 617) and at the same time administratively feasible and efficient. The formula finally selected is dependent on the actual value of the foreign currency in our own money. The rate for the foreign exchange with which the imported goods are purchased is recognized as the measure of value of the foreign currency; the use of that rate 'reflects values in United States currency which are deemed sufficiently accurate to serve as the measure of the valuation of the goods for purposes of the *ad valorem* tax. As noted in *United States* v. *Whitridge, supra*, p. 144, the actual "unit of cost" conforms with the truth and the meaning of the invoice.
>
> * * * In the present case the British Government fixed the "official" rate for the purchase of specified commodities for export. One who purchased woolens for export need not acquire pounds at that rate. A lower rate was available and was indeed taken advantage of by petitioner when he purchased pounds to pay for the woolens. If the higher "official" rate is used in the valuation of the woolens, the cost of the goods will be distorted and an inflated value for the customs purposes will be placed upon them. Such a result would be quite out of harmony with the history of these statutes and should be avoided unless the result is plainly required by the language of § 522 (c). We do not think it is.

In the instant case the converse of this situation is presented. Here, although one who purchased these flax fabrics and articles for export need not acquire pounds at the "official" rate, nevertheless, this importer did acquire the pounds used in payment for the merchandise at such higher rate. It, therefore, appears that under the reasoning of the Supreme Court the use of the higher "official" rate in the valuation of the instant merchandise would not result in a distortion of the *cost* of the goods to this particular importer. It would, however, in view of the provisions of section 402 of the Tariff Act of 1930, as amended by T. D. 49646, result in placing an "inflated value for customs purposes" upon the goods.

In view of our understanding of the stipulation, the importer herein was not precluded from acquiring pounds sterling, which must be remitted in payment for these goods, at the "free" rate. That such rate was not used in purchasing the currency from the Chase National Bank, in the opinion of the court, does not alter the fact that the merchandise was freely offered for sale and sold for export to purchasers in the principal markets of the United Kingdom in the usual wholesale quantities and in the ordinary course of trade.

For the foregoing reasons we sustain plaintiff's claim and hold that the currency of the invoice should be converted at the buying rate in the New York market at noon on the day of exportation of the involved merchandise, which we hold for the purposes of this case to be the "free" rate of exchange for pounds sterling, as set forth by the collector of customs on the entry.