In support of his contention herein counsel for the plaintiff has cited *United States* v. *Oppleman*, 25 C. C. P. A. 168; *Adlanco* v. *United States*, Abstract 4376; *United States* v. *Janson*, 16 Ct. Cust. Appls. 315; *United States* v. *Van Bourgondien*, T. D. 43135; *United States* v. *Adlanco*, T. D. 46778; *Simon* v. *United States*, 8 Ct. Cust. Appls. 273; and *United States* v. *Bernard*, 30 C. C. P. A. 213.

In our opinion the merchandise involved in the present case is distinguishable from the merchandise in each of the cited cases. In the *Oppleman* case, *supra*, the appellate court said:

The aneroid barometers here involved operate in accordance with mechanical principles. That they are mechanical contrivances, having operating movable parts, such as springs, hairsprings, levers, chains, and diaphragms, without which parts and their coordinate movements the articles would not function, cannot be seriously questioned.

In the first place there is serious doubt that the involved merchandise could be considered as mechanical contrivances under any circumstances, and in the second place, it has no operating movable parts, such as springs, hairsprings, levers, chains, and diaphragms.

The *Adlanco* case, Abstract 4376, involved so-called phonophores, concerning which the court found:

\* \* \* the articles consist of electrical sound receiving and sound amplifying devices used by people with defective hearing and that the mechanism receives. the sound waves of human speech through two microphones in the transmitter, which produces a vibration on the diaphragms of the microphones, which in turn is transformed into electrical energy, and which electrical energy is amplified by the power of an electric battery and transformed again into mechanical energy, entering into the diaphragm of the receiver and being changed into sound vibrations. These vibrations in passing through the mechanism have been made much stronger and therefore are more readily audible.

There are no microphones and no transmitter in the involved merchandise which produce a vibration on the diaphragms of the microphones, which in turn is transformed into electrical energy, and which electrical energy is amplified by the power of an electric battery and transformed again into mechanical energy.

In the *Janson* case, *supra*, the involved merchandise consisted merely of elongated, spoollike, clear glass insulators, each about 3½ inches in length and 1 inch in diameter, with round holes at each end about one-fourth inch in diameter, which in its final conclusion, our appellate court held to be properly classifiable as manufactures of glass, not specially provided for, rather than as parts of machines.

The other cases cited by counsel for the plaintiff are equally distinguishable from the case at bar, and an analysis of those cases is not deemed necessary here.

In our opinion the involved merchandise does not meet any of the requirements of a machine as judicially determined by this and our appellate court. All claims of the plaintiff are therefore overruled and judgment will be rendered in favor of the defendant.

BEFORE THE THIRD DIVISION, APRIL 26, 1949

No. 53059.—Kaufmann Department Stores, Inc. *v.* United States, protest 49357–K (Pittsburgh).

Opinion by EKWALL, J. It was stipulated that the issue herein is the same in all material respects as that presented in *Mamary Bros., Inc.* v. *United States* (21 Cust. Ct. 135, C. D. 1142). In accordance therewith it was held that the currency of the invoices should be converted at the buying rate in the New York market at noon on the day of exportation (the "free" rate of exchange for pounds sterling), as certified by the Federal Reserve bank and set forth by the collector on entries 2, 636, and 638. The protest was sustained to this extent.

No. 53060.—L. G. Motor (Staines), Ltd., et al. v. United States, protests 66447–K, etc. (New York).

Opinion by EKWALL, J. It was stipulated that the issue herein is the same in all material respects as that presented in *Mamary Bros., Inc.* v. *United States* (21 Cust. Ct. 135, C. D. 1142). In accordance therewith it was held that the currency of the invoices should be converted at the buying rate in the New York market at noon on the day of exportation (the "free" rate of exchange for pounds .sterling), as certified by the Federal Reserve bank and set forth by the collector on each of the entries involved. The protests were sustained to this extent.

No. 53061.—Glenby Fraser & Co. et al. v. United States, protests 120795–K, etc. (New York).

Opinion by JOHNSON, J. For the reasons stated in *Austin, Nichols & Co., Inc.* v. *United States* (22 Cust. Ct. 33, C. D. 1155), the claim of the plaintiffs was sustained. The protests were overruled in all other respects.

No. 53062.—Austin, Nichols & Co., Inc., et al. v. United States, protests 124138–K, etc. (New York).

Opinion by JOHNSON, J. For the reasons stated in *Austin, Nichols & Co., Inc.* v. *United States* (22 Cust. Ct. 33, C. D. 1155), the claim of the plaintiffs was sustained. The protests were overruled in all other respects.

No. 53063.—Schenley Import Corp. et al. v. United States, protests 137573–K, etc. (New York).

Opinion by JOHNSON, J. For the reasons stated in *Austin, Nichols & Co., Inc.* v. *United States*, (22 Cust. Ct. 33, C. D. 1155), the claim of the plaintiffs was sustained. The protests were overruled in all other respects.